COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                       NOS.
2-07-158-CR 

       2-07-159-CR

 

 

MARVIN CARSON                                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 16TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I. Introduction

In seven points, Appellant
Marvin Carson appeals his convictions of aggravated robbery in two cases.  We affirm.

 

 








II. Factual and Procedural
History

At approximately 11:45 p.m.
on March 31, 2006, Brandy Lovaglio was robbed at gunpoint as she was exiting
her car in the parking lot of her apartment complex.  Approximately five hours later, at 4:45 a.m.,
a second robbery took place in the parking lot of a nearby apartment
complex.  The complainant in this crime,
Judy Aguilar, was also robbed at gunpoint as she was exiting her car.  The perpetrator in both robberies wore a mask
and was described by the complainants as a black man of medium height and
build.  Aguilar=s husband, who witnessed his wife=s robbery, told the police that the perpetrator jumped into a
light-colored, four-door sedan that he believed was a Chevy Impala. 

Within an hour of the second
aggravated robbery, police stopped two men because the vehicles they were
driving, light-colored Impalas, matched the description of the robber=s car that was given to the police by Aguilar=s husband.  The police detained
both suspects until the police brought Ms. Aguilar to the traffic stops to
determine whether she could identity either suspect as the individual who
robbed her.  Ms. Aguilar identified the clothes
of the second suspect, Appellant, as the clothes worn by the robber.  The police later found property belonging to
both complainants in Appellant=s car. 








Subsequently, Appellant was
indicted for the aggravated robberies of Lovaglio and Aguilar, to which he
pleaded not guilty.  The jury found
Appellant guilty of both offenses and assessed his punishment at eighteen years= imprisonment in the TDCJ-ID for each case.  The trial court sentenced him accordingly. 

III. Disqualification of a
Prosecuting Attorney

In Appellant=s first point, he argues that he was denied due process because the
Denton County Criminal District Attorney=s Office was disqualified from his prosecution because the First
Assistant District Attorney originally represented him in each of the instant
cases. 

A. Applicable Facts      

On May 22, 2006, Jamie Beck
was appointed to represent Appellant on both charges of aggravated
robbery.  During her representation of
Appellant, she negotiated a plea bargain offer of eight years= confinement in the TDCJ-ID. 
Appellant did not accept the plea bargain offer, and the case was set
for jury trial on January 29, 2007, with Ms. Beck as trial counsel.








However, effective January 2,
Ms. Beck began employment as the First Assistant District Attorney for Denton
County.  On January 10, Earl Dobson was
appointed to represent Appellant. 
Subsequently, the State changed the plea bargain offer from eight years= confinement to thirty-five years= confinement.  Appellant rejected
the plea offer. 

On February 15, Appellant
filed a motion to disqualify the Denton County District Attorney=s Office from prosecuting his case. 
At a hearing on the motion, Appellant testified that during the course of
Ms. Beck=s representation she acquired confidential information and discussed a
defense strategy with Appellant, and that based on the change of the plea
bargain offer, he was being denied the right to a fair trial.  Bill Schultz, the prosecutor assigned to both
of Appellant=s cases,
testified that neither he nor the second-chair prosecutor had ever discussed
facts, communications, or strategy about Appellant=s case with Ms. Beck. 
Subsequently, the trial court denied Appellant=s motion to disqualify the district attorney=s office. 

B. Applicable Law








It constitutes a manifest
violation of due process for an attorney to represent the State against a
client whom he has represented as a private practitioner in the past in the
same case.  State ex rel. Young v.
Sixth Judicial Dist. Court of Appeals at Texarkana, 236 S.W.3d 207, 211
(Tex. Crim. App. 2007); Hernandez v. State, 24 S.W.3d 846, 852 (Tex.
App.CEl Paso 2000, pet. ref=d).  When a district attorney
prosecutes someone whom he previously represented in the same case, the
conflict of interest is obvious and the integrity of the prosecutor=s office suffers correspondingly.  Ex parte Morgan, 616 S.W.2d 625, 626 (Tex.
Crim. App. 1981).  Moreover, there exists
the very real danger that the district attorney would be prosecuting the
defendant on the basis of facts acquired by him during the existence of his former
professional relationship with the defendant.  Id.  Use of such confidential knowledge would be a
violation of the attorney‑client relationship and would be clearly
prejudicial to the defendant.  Id.  








Two pertinent principles
exist regarding the disqualification of elected district or county attorneys
and their assistants who have previously represented a defendant in a
particular matter.  Scarborough v.
State, 54 S.W.3d 419, 424 (Tex. App.CWaco 2001, pet. ref=d).  First, if an elected
prosecuting attorney has previously represented a defendant in a particular
proceeding, then Texas Code of Criminal Procedure article 2.01 disqualifies him
from representing the State in the matter and that disqualification is imputed
to those assistants Awho serve at
his will and pleasure.@[2]  Id. (citing State v.
May, 270 S.W.2d 682, 684 (Tex. Civ. App.CSan Antonio 1954, no writ.)). 
Second, if an assistant district or county attorney has previously represented
a defendant in a particular proceeding, then that particular attorney is
disqualified from assisting in the prosecution of the case, but the elected
prosecutor and his other assistants are not. 
Scarborough, 54 S.W.3d at 424. 

C. Analysis

Appellant argues that Ms.
Beck was clearly disqualified from the prosecution of his cases because she
represented him prior to accepting the position with the district attorney=s office and because of her supervisory role over those individuals
whom prosecuted him. 








After reviewing the record,
it is apparent that the trial court did not err in denying Appellant=s motion to disqualify the Denton County District Attorney=s Office.  First, the record
clearly shows that Ms. Beck did not personally prosecute Appellant.  Had Ms. Beck personally prosecuted Appellant
after she became employed at the district attorney=s office, then it would have been necessary for the trial court to
disqualify her because she had previously represented Appellant in the same
case.  See Hernandez, 24 S.W.3d at
851 (holding that it is a violation of the due process of law under the
Fourteenth Amendment for an attorney to represent a criminal defendant, and
then accept employment with the district attorney=s office and personally prosecute the defendant) (emphasis
added).  However, this was not the
case.  The record does not show, nor has
Appellant presented, any evidence demonstrating that Ms. Beck personally
prosecuted him in this case.  

Nor do we agree with Appellant=s argument that merely because Ms. Beck acted in a supervisory role as
the first assistant district attorney that the trial court should have
disqualified the entire office from prosecuting Appellant.  First, an entire staff of prosecutors will
only be disqualified if an elected district attorney is disqualified
because they Aserve at the
will and pleasure@ of the
elected district attorney.  See
Scarborough, 54 S.W.3d at 424.  Here,
the elected district attorney was not disqualified; therefore, no
disqualification may be imputed to those prosecutors who work for the district
attorney.[3]  








Further, we have not found,
nor has Appellant cited, any authority that expands this rule of
disqualification to include non-elected supervisors, such as a first
assistant.  Therefore, even though
Appellant attempts to show that the entire district attorney=s office should have been disqualified because the prosecutors were
supervised by Ms. Beck and worked at her Awill and pleasure,@ there simply is no law that supports their disqualification.  As the law stands today, imputed
disqualification is applicable only from an elected district attorney to
those staff members who Aserve at his
[or her] will and pleasure.@ 

See Scarborough, 54 S.W.3d at 424 (holding that an assistant district attorney
that previously represented a defendant in a particular proceeding is
disqualified from assisting in the prosecution of the case, but the elected
prosecutor and his other assistants are not); see also Hernandez, 24
S.W.3d at 851 (holding that there was no authority to support appellant=s argument that his due process rights were violated because his
former counsel was employed by the same district attorney=s office that prosecuted him). 








Lastly, Appellant=s due process rights were not violated merely because Ms. Beck and the
entire district attorney=s office did
not voluntarily recuse themselves and request the appointment of a special
prosecutor to prosecute Appellant=s case.  See State ex
rel. Eidson, 793 S.W.2d at 6.  Even
though Ms. Beck was in a supervisory position, the record does not show that
she had any involvement in this particular case.  Indeed, the district attorney=s office essentially built a wall between Ms. Beck and those
prosecutors who participated in the prosecution of Appellant.  Bill Schultz, the prosecutor assigned to both
of Appellant=s cases,
testified that neither he nor the second-chair prosecutor had ever discussed
facts, communications, or strategy about Appellant=s case with Ms. Beck.  Based on
the record, we conclude that there is no evidence to support Appellant=s bare assertion that Ms. Beck had any participation, direct or
indirect, in the case against Appellant. 
Therefore, we hold that no due process violation occurred.  See State ex rel. Young, 236 S.W.3d at
211.  Accordingly, we overrule his first
point. 

IV.  Extraneous Offense Evidence

In Appellant=s second, third, and fourth points, he argues that the trial court
erroneously admitted extraneous offense evidence over his Rule 403, hearsay,
and Crawford objections.  Because
all three points concern the same testimony and evidence, we will analyze them
together.

A. Standard of Review

The standard of review for a
trial court=s admission
of evidence is abuse of discretion, and wide discretion is afforded the trial
judge.  Theus v. State, 845 S.W.2d
874, 881 (Tex. Crim. App. 1992); Lajoie v. State, 237 S.W.3d 345, 352
(Tex. App.CFort Worth
2007, no pet.).  The trial court=s decision should be reversed on appeal only if there is a showing of
a clear abuse of discretion.  Theus, 845
S.W.2d at 881.  Only if the court=s decision falls outside the Azone of reasonable disagreement@ has it abused its discretion.  Rankin v. State, 974 S.W.2d 707, 718 (Tex.
Crim. App. 1996) (op. on reh=g); Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1991) (op. on reh=g).








If the trial judge=s decision is correct on any theory of law applicable to the case,
however, it will be sustained.  Romero
v. State, 800 S.W.2d 539, 543‑44 (Tex. Crim. App. 1990).  This principle holds true even when the trial
judge gives the wrong reason for his decision, and is especially true with
regard to admission of evidence.  Id.

B. Applicable Facts

Before trial began, Appellant=s trial counsel filed a motion in limine seeking to prevent the State
from introducing evidence of any extraneous offense or bad acts.  At the hearing on the motion, the State
announced its intention to introduce evidence of a third attempted aggravated
robbery that occurred on the same night as the other two robberies.  The evidence was to be introduced through the
testimony of Officer Curtis regarding a dispatch call he received while
interviewing Ms. Aguilar about the aggravated robbery committed against
her.  The State argued that the evidence
was admissible as same transaction contextual evidence and relevant on the
issue of identity.  At this point in the
pretrial hearing, Appellant objected that admission of the evidence violated
Rule 403, hearsay, and the Confrontation Clause.  The trial court overruled Appellant=s objections and denied his motion in limine. 








Subsequently, the State
brought up the extraneous attempted aggravated robbery offense in its opening
statement to the jury, and again when the State called Officer Guy Curtis to
testify regarding the dispatch call.[4]  Officer Curtis testified that at 4:45 a.m. on
April 1, he was dispatched to the apartment of Judy Aguilar on an aggravated
robbery call.  Officer Curtis testified
that when he responded to the call regarding the Aguilar robbery, he already
knew of the original aggravated robbery of Brandy Lovaglio and that he should
be on the lookout for a black male of medium build, dressed in dark clothing,
and driving a light colored Chevrolet Impala. 
At the Aguilar=s apartment,
he learned from Ms. Aguilar=s husband, Jorge Aguilar, who witnessed the robbery, that the man who
robbed his wife at gunpoint was black and stocky, that his face was covered by
something, and that the man had run to a silver Impala after the robbery.[5]  Jorge stressed that the car had a big box or Achest@ in the back
seat. 








Officer Curtis testified that
shortly after beginning his interview of the Aguilars, he received a dispatch
call regarding an aggravated robbery attempt that had just occurred at a nearby
apartment complex.  He further testified
that the dispatcher informed him that a light-colored or silver four-door car,
driven by a black male, was seen leaving the scene of the aggravated robbery
attempt.  Officer Curtis testified that
he immediately left the Aguilars= apartment to respond to the call. 
At this point in Officer Curtis=s testimony, the trial court granted Appellant=s request for a limiting instruction so that the jury could consider
the extraneous offense evidence only for identification purposes.[6]   








After the trial court issued
the limiting instruction, Officer Curtis resumed his testimony and stated that
as he was exiting the Aguilar=s apartment complex, he observed a silver or gray four-door Impala,
driven by a black male, drive away from the location where the third attempted
robbery had occurred. Officer Curtis also noticed that a big box was in the
back seat of the car.  Officer Curtis
stopped the car, that was driven by Appellant, and a subsequent search resulted
in the discovery of a ski mask, gun, and property belonging to Lovaglio and
Aguilar. 

The jury also heard testimony
from Officer Jaime McDonald.  Officer
McDonald testified that she was dispatched to the Aguilars= apartment in response to an aggravated robbery.  She stated that shortly after she and Officer
Curtis began to interview the Aguilars, Officer Curtis left the apartment
complex because he had received a dispatch call of another attempted
robbery.  She testified that within two
or three minutes she also left to respond to the call, and she drove approximately
one block to where Officer Curtis had made a traffic stop of Appellant.  She further testified that Appellant was
driving a gray Chevrolet Impala. 
Appellant did not object to this testimony. 








Following Officer McDonald=s testimony, Detective James Wisenger, the detective who investigated
the robberies, testified that the complainant of the third attempted robbery
was George Alexander.  According to
Detective Wisenger, Alexander told the officers that because he was
color-blind, he was unable to identify the color of the robber=s clothes or mask.  Wisenger
further testified that Alexander stated that when the robber approached him,
Alexander told the robber he did not have any money and so the robber left.
Lastly, Detective Wisenger testified that Appellant was not charged with the
aggravated robbery of Alexander because Alexander had made it clear that he
would not cooperate as a witness. 

C. Probative Value of the Evidence

Appellant contends that Officer
Curtis=s testimony regarding the dispatch call reporting an attempted robbery
should have been excluded because the probative value of the evidence was
substantially outweighed by the prejudicial matter of the evidence. 

1. Applicable Law








As a general rule, to prevent
an accused from being prosecuted for some collateral crime or misconduct, the
State may not introduce evidence of bad acts similar to the offense charged,
even if relevant.  Swarb v. State, 125
S.W.3d 672, 681 (Tex. App.CHouston [1st Dist.] 2003, pet. dism=d).  Texas Rule of Evidence
404(b) states that evidence of extraneous offenses is not admissible at the guilt‑innocence
phase of a trial to prove that a defendant committed the charged offense in
conformity with a bad character.  Tex. R. Evid. 404(b); Nobles v.
State, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992).  However, this type of evidence may be
admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident.  Tex.
R. Evid. 404(b); Swarb, 125 S.W.3d at 681.  

Ordinarily, to be admissible
to show identity, an extraneous offense must be so similar to the charged
offense as to mark the offenses as the defendant's handiwork.  Johnson v. State, 68 S.W.3d 644, 651 (Tex.
Crim. App. 2002).  For such evidence to
be admissible, identity must be an issue in the case.  Id.  Once identification becomes an issue, the
State has the burden to show that the two crimes were so similar that they were
likely the product of only one person.  Id.; Taylor v. State, 920 S.W.2d
319, 322 (Tex. Crim. App. 1996).  In
determining similarity of the offenses for the purpose of establishing
identity, appellate courts should take into account both the specific
characteristics of the various offenses and the time interval between them.  Johnson, 68 S.W.3d at 651.

2. Analysis 








In this case, the issue of
identity was clearly before the jury. 
Specifically, the issue of identity was raised during Ms. Aguilar=s direct testimony, and again, during her cross-examination.  See id. (citing Ransom v. State,
503 S.W.2d 810, 813 (Tex. Crim. App. 1974) (op. on reh=g) (ruling that identity may become an issue in the case through
cross-examination of witnesses)).  Ms.
Aguilar testified that less than an hour after she was robbed, she identified
Appellant as the person who robbed her, relying on the fact that the clothes
Appellant was wearing matched the clothing worn by the robber. 








Not only was the issue of
identity raised in this case, but the extraneous offense was so similar to the
other offenses Appellant was charged with that the extraneous offense could be
marked as Appellant=s
handiwork.  See Lane v. State, 933
S.W.2d 504, 519 (Tex. Crim. App. 1996) (holding that even if the issue of
identity is raised, to be admissible, an extraneous offense must be so similar
to the offense charged that the offenses are marked as the accused=s handiwork).  The record shows
that the extraneous offense was committed within close temporal and
geographical proximity of the charged offenses. 
It is important to note that the exactness that might be required of an
offense committed at a more remote period of time might not necessarily be
required for an offense committed within a very short period of time.  Johnson, 68 S.W.3d at 651.  In this case, all three offenses occurred
within a few hours of each other, and the second and third offenses actually
occurred within minutes of each other.[7]  Further, although the three offenses occurred
at different apartment complexes, they were actually similarly located; indeed,
the third robbery attempt actually occurred less than one minute away from the
apartment complex where the second offense occurred.[8]  

Moreover, in the two
robberies and third attempted robbery, the perpetrator approached the
complainants with a gun, at night in a parking lot, and with a ski mask
covering his face.  Given the
close temporal and geographical proximity of the offenses as well as the
similar manner in which the offenses occurred, we determine that the crimes
were so similar that they were likely the product of the same person.  See id. at 650‑51.  For these reasons, we determine that the
evidence was admissible under Rule 404(b). 
See Lane, 933 S.W.2d at 519 (stating that the court of criminal
appeals has previously held that offenses were sufficiently similar to prove
identity under Rule 404(b) when (1) both offenses were robberies, (2) both
offenses were committed at gunpoint, (3) the defendant was aided by a
confederate, and (4) the offenses occurred three days apart). 








After a trial court properly
rules that the evidence is admissible under Rule 404(b), the trial court must
then balance probativeness and prejudice under Rule 403.  Montgomery, 810 S.W.2d at 387; Feldman
v. State, 71 S.W.3d 738, 754 (Tex. Crim. App. 2002).  Because the trial court is in a superior
position to gauge the impact of relevant evidence in evaluating its
determination under Rule 403, we reverse the trial court=s decision to admit the evidence only after a clear abuse of
discretion.  Mozon v. State, 991
S.W.2d 841, 847 (Tex.  Crim. App. 1999); Jones,
119 S.W.3d at 421‑22.  Relevant
evidence may be excluded under Rule 403 only when its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, misleading the jury, considerations of undue delay, or needless
presentation of cumulative evidence. Tex.
R. Evid. 403; Mozon, 991 S.W.2d at 846‑47.

A proper Rule 403 analysis
includes, but is not limited to, the following factors: (1) the probative value
of the evidence; (2) the potential to impress the jury in some irrational, yet
indelible, way; (3) the time needed to develop the evidence; and (4) the
proponent=s need for
the evidence.  Prible v. State,
175 S.W.3d 724, 733 (Tex. Crim. App. 2005); Montgomery, 810 S.W.2d at
390.








After reviewing the record,
we are not persuaded by Appellant's contention that the extraneous evidence of
the third attempted aggravated robbery was unfairly prejudicial under Rule
403.  We first recognize that the extraneous
offense evidence has an inherent probativeness by reason of the similarity of
the extraneous offenses to the charged offense. 
See Booker v. State, 103 S.W.3d 521, 534 (Tex. App.CFort Worth 2003, pet. ref=d).  We agree with the trial
court that the evidence of the third attempted robbery was highly relevant to
the issue of identity.  Immediately after
being robbed, Ms. Aguilar gave the police a description of the suspect=s clothing and vehicle.  Her
description was similar to the description of the first victim, Lovaglio, as
well as the description that was given to Officer Curtis regarding the suspect
and vehicle involved in the third attempted aggravated robbery.  The record clearly shows that the robberies
occurred in close temporal and geographic proximity and occurred in a similar
fashion; thus, evidence of the third attempted robbery was relevant.  See Lane, 933 S.W.2d at 519.  

Furthermore, even without
these similarities, the dispatch description that led to Appellant=s apprehension after the third attempted aggravated robbery also led
to the discovery that Appellant had in his possession personal items belonging
to complainants of both the first and second robbery.  This discovery was a significant piece of
evidence tying Appellant to the first and second aggravated robberies.  Thus, we determine that the extraneous
offense evidence was highly probative because it tended to prove Appellant=s identity as the perpetrator.  See Johnson, 68 S.W.3d at 651.








As for the potential to
irrationally impress the jury, it is true that an extremely similar extraneous
offense always carries the potential to impress the jury of a defendant=s character conformity, an impression the law seeks to avoid.  However, the impermissible inference of
character conformity can be minimized through a limiting instruction.  Lane, 933 S.W.2d at 520.  In this case, Appellant=s trial counsel requested and received a limiting instruction
restricting the jury=s
consideration of the dispatch call for any purpose other than identity.  We do not perceive any reason a limiting
instruction was any less effective in the present case than in other cases in
which identity is an issue.  See
id.  Thus, we determine that the
evidence did not impress the jury in an irrational way. 

As for the amount of trial
time needed to develop the evidence, the State spent relatively little time
developing this evidence when compared to the time spent developing its case in
chief.  The State mentioned the dispatch
call that Officer Curtis received during the State=s opening statements, briefly during Officer Curtis=s testimony, and again during the State=s closing argument.  We do not
believe that the amount of time was excessive.  See Lane, 933 S.W.2d at 520 (stating that
where the extraneous offense constituted less then one‑fifth of the
testimony in the State=s case‑in‑chief
(less than one day out of five days of testimony), the amount of time was not
excessive).








Lastly, in assessing the
State=s need for this evidence, we acknowledge that even without the
extraneous offense evidence, the record clearly shows that Appellant had
committed two aggravated robberies. 
However, the extraneous offense evidence does tend to prove Appellant=s identity as the perpetrator of all three aggravated robberies.  Indeed, as we previously discussed, the
dispatch description that led to Appellant=s apprehension after the third attempted aggravated robbery also led
to the discovery that Appellant had in his possession personal items belonging
to complainant=s of both
the first and second aggravated robberies. 
This evidence serves as the link between Appellant and all three
robberies, thus supporting the State=s need for the evidence. 

After balancing these
factors, we determine that the trial court was within the zone of reasonable
disagreement when it concluded that the probative value of the extraneous
offense was not substantially outweighed by its prejudicial impact.  See Prible, 175 S.W.3d at 731.

D. Confrontation Clause                

Appellant argues that he was
denied his constitutional right of confrontation when he was not permitted to
cross-examine the dispatcher regarding statements the dispatcher made to
Officer Curtis regarding the third aggravated robbery attempt. 








The Sixth Amendment to the
United States Constitution provides that A[i]n all criminal prosecutions, the accused shall enjoy the right to .
. . be confronted with the witnesses against him.@  U.S. Const. amend. VI.  The
Confrontation Clause=s central
concern is to ensure the reliability of the evidence against a criminal
defendant by subjecting it to rigorous testing in the context of an adversarial
proceeding before the trier of fact.  Kearney v. State  181 S.W.3d 438, 441‑42 (Tex. App.CWaco 2005, pet. ref=d).  The United States Supreme
Court held that Atestimonial
statements@ of
witnesses absent from trial are admissible over a Sixth Amendment Confrontation
Clause objection only when the declarant is unavailable and only where the
defendant has had a prior opportunity to cross‑examine.  Crawford v. Washington, 541 U.S. 36, 59,
124 S. Ct. 1354, 1368‑69 (2004).








The threshold issue in our Crawford
analysis is whether the statements were testimonial.  Kearney, 181 S.W.3d at 441-42.  The court did not define Atestimonial,@ but it
noted three formulations of Acore@ testimonial
evidence: (1) ex parte in‑court testimony or its functional equivalent,
such as affidavits, custodial examinations, prior testimony not subject to
cross‑examination, or similar pretrial statements that declarants would
reasonably expect to be used prosecutorially, (2) extrajudicial statements of
the same nature contained in formalized testimonial materials, and (3)
statements that were made under circumstances which would lead an objective
witness reasonably to believe that the statement would be available for use at
a later trial.  See Crawford, 541
U.S. at 51‑52, 124 S. Ct. at 1364. 
The court further explained that the term Atestimonial@ applies at
a minimum to prior testimony at a preliminary hearing, before a grand jury, or
at a former trial; and to police interrogations.  Id. at 68, 124 S. Ct. at 1374.








In this case, we hold that
the dispatcher=s statements
to Officer Curtis do not fall within the categories of testimonial evidence
described in Crawford.  The
dispatch call in this case is similar to 9-1-1 calls where statements made
during the call were not given in response to structured police questioning or
with an eye to future legal proceedings, but were initiated by a complainant or
witness in order to obtain police assistance.  See, e.g., Kearney, 181 S.W.3d at 442‑43
(holding that 9‑1‑1 call reporting a robbery in progress and to
summon emergency police help and statements made within the call were
nontestimonial in nature).  In the
same way, the call Officer Curtis received from the police dispatcher was
intended to alert him that his assistance was needed at a nearby location
because of the occurrence of a crime.  The call did not bear any of the official,
formal qualities of police interactions that the Confrontation Clause was
intended to protect against, and therefore, we determine that it was
nontestimonial.  See id.  Because we hold that the disputed
statements in this case were not testimonial, Appellant=s constitutional right to confront the declarant was not
violated.  See Crawford, 541 U.S.
at 51-42, 124 S. Ct. at 1364. 

E. Hearsay

Appellant next contends that
Officer Curtis=s testimony
regarding the details of the police dispatch was hearsay without any applicable
exception. The Texas Rules of Evidence prohibit the admission of hearsay
evidence except as provided by statute or other rules prescribed pursuant to
statutory authority.  See Tex. R. Evid. 802.  Hearsay is a statement, including a written
statement, other than one made by the declarant while testifying at the trial,
which is offered to prove the truth of the matter asserted.  See Tex.
R. Evid. 801(d); Dinkins v. State, 894 S.W.2d 330, 347 (Tex.
Crim. App. 1995), cert. denied, 516 U.S. 832 (1995).  Thus, a statement not offered to prove the
truth of the matter asserted is not hearsay.  Dinkins, 894 S.W.2d at 347‑48. 

In this case, the State
argues that the communications between the police officers and the dispatcher
were not offered for the truth of the matter asserted because the testimony was
elicited for the purpose of showing the circumstances surrounding and leading
to the detention of Appellant.  








Assuming without deciding
that the trial court erred in admitting the testimony, we conduct a harm
analysis to determine whether the error calls for reversal of the judgment.  Tex. R.
App. P. 44.2.  The admission of
otherwise inadmissible hearsay is a nonconstitutional error, and therefore is
disregarded unless it affected Appellant=s substantial rights.  Tex. R. App. P. 44.2(b); see Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999); Moon v. State,
44 S.W.3d 589, 594‑95 (Tex. App.CFort Worth 2001, pet. ref=d); Coggeshall v. State, 961 S.W.2d 639, 642-43 (Tex. App.CFort Worth 1998, pet. ref=d).  A substantial right is
affected when the error had a substantial and injurious effect or influence in
determining the jury=s
verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997); Coggeshall, 961 S.W.2d at
643.  In making this determination, we
review the record as a whole.  See
Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). 








After reviewing the record,
we determine that even if the trial court=s admission of the hearsay testimony was error, any error was
harmless.  First, any error was
not preserved because the same substantive evidence was introduced through
Officer McDonald=s testimony
without objection.  See Reyes v. State,
84 S.W.3d 633, 638 (Tex. Crim. App. 2002) (stating that even if the State=s exhibit was hearsay, any error was not preserved because the same
substantive evidence was introduced elsewhere without objection).  Specifically, Officer McDonald testified that
on April 1 she responded to the aggravated robbery of Ms. Aguilar.  She testified that during her and Officer
Curtis=s interview of the Aguilars, Officer Curtis received a dispatch call
regarding another aggravated robbery attempt at a nearby location.  Approximately two to three minutes after
Officer Curtis left in response to the call, Officer McDonald also
responded.  She stated that she drove
approximately one block to where Officer Curtis had made a traffic stop of
Appellant.  Officer McDonald testified
that the car Appellant was driving was a gray Chevy Impala.[9]  At no point did Appellant object to this
portion of Officer McDonald=s testimony.  Therefore,
because Appellant did not object to Officer McDonald=s testimony, which included the same substantive evidence that Officer
Curtis=s hearsay testimony contained, we hold that any error was not
preserved.  See id. 








For these reasons, we
determine that the trial court=s error, if any, in admitting the hearsay testimony did not have a
substantial or injurious effect on the jury=s verdict and did not affect Appellant=s substantial rights.  See
King, 953 S.W.2d at 271.  Thus, we
disregard any error.  See Tex. R. App. P. 44.2(b); Moon,
44 S.W.3d at 594-95 (holding that the erroneous admission of inadmissible
hearsay evidence has been held harmless).[10]


F. Conclusion

Having determined that the
trial court did not err in admitting Officer Curtis=s testimony regarding the dispatch call under a Rule 403 or
confrontation clause analysis, and that any error in admitting the hearsay
evidence over Appellant=s hearsay
objection was harmless, we overrule Appellant=s second, third, and fourth points. 


V.  Exculpatory Evidence

In Appellant=s fifth point, he argues that the State failed to turn over
exculpatory evidence, therefore depriving him of the opportunity to present a
complete defense. 








A. Applicable Facts              

Before trial began, Appellant
submitted a motion to the trial court challenging the eyewitness identification
of Appellant.  Specifically, the motion
challenged Ms. Aguilar=s
identification of Appellant.  At a
pretrial hearing on Appellant=s motion, Ms. Aguilar testified that shortly after she was robbed, she
was taken by the investigating officers to the Dallas Tollway, where the police
had detained an individual driving a white Impala.  The man, Glossen, had been stopped after the
police officer received an area-wide dispatch alerting police that an
aggravated robbery had just occurred in the area, and that the suspect was
driving a light-colored Impala.  Glossen
was stopped approximately five miles from the scene of the second aggravated
robbery and the aggravated robbery attempt. 
Ms. Aguilar testified that she did not recognize the man as the
individual who had robbed her because his clothing did not match the clothing
worn by the robber.  Specifically, Ms.
Aguilar testified that Glossen was a Aperson with dark skin, his or her clothes were light-colored, his or
her pants were not jeans, they were not denim, they were cloth,@ and that the individual=s pants were different-colored. 
For these reasons, Ms. Aguilar determined that Glossen was not the
person who had robbed her.  








Ms. Aguilar further testified
that after determining that Glossen did not match the robber=s description, the police took her to a location near her apartment
complex where the other officers had detained Appellant.  Before the police permitted Ms. Aguilar to
see Appellant, the police asked her for a description of the clothes the robber
was wearing, as well as the contents of her purse that had been stolen.  Ms. Aguilar testified that the man who robbed
her Awas wearing dark tennis shoes and shorts, long denim shorts, dark.@  The police then brought the
second suspect out, and Aguilar identified him as the individual who had robbed
her.  She later testified that she
recognized Appellant because of the clothes he was wearing.        








Subsequent to Ms. Aguilar=s testimony at the pretrial hearing, Appellant=s counsel announced that the State had not provided him with any
information regarding the other suspect, Glossen, who Ms. Aguilar had
determined was not the individual whom robbed her.  Appellant=s counsel argued that this information was exculpatory and asked the
trial court for a continuance to investigate the other suspect.  In response, the State argued that the
information was not exculpatory because Ms. Aguilar did not identify the man,
the man was stopped only because he was driving a light-colored Impala, and the
man had nothing to do with the aggravated robberies.[11]  The trial court denied Appellant=s motion for continuance. 

B. Applicable Law








A prosecutor has an
affirmative duty to turn over material, favorable evidence to the defense.  Little v. State, 991 S.W.2d 864, 866
(Tex. Crim. App. 1999); McFarland v. State, 928 S.W.2d 482, 511 (Tex.
Crim. App. 1996) (citing Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194
(1963)).  The three‑part test used
to determine whether a prosecutor=s actions have violated due process is whether the prosecutor (1)
failed to disclose evidence (2) favorable to the accused and (3) the evidence
is material, meaning there is a reasonable probability that, had the evidence
been disclosed to the defense, the result of the proceeding would have been
different.  Little, 991 S.W.2d at
866.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome of the trial.  Ex parte Kimes, 872 S.W.2d 700, 702‑03
(Tex. Crim. App. 1993).  The mere
possibility that undisclosed evidence may have helped the defense or affected
the trial=s outcome
does not establish Amateriality@ in the constitutional sense.  Hampton
v. State, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002).  Whether the evidence is material is viewed in
the context of the overall strength of the State=s case.  Id. at 613.

Furthermore, if the evidence
was turned over in time for the defendant to use it in his defense, the
defendant=s claim
would fail.  Little, 991 S.W.2d at
866; Givens v. State, 749 S.W.2d 954, 957 (Tex. App.CFort Worth 1988, pet. ref=d) (stating that if the accused received the material in time to put
it to effective use at trial, his conviction should not be reversed simply
because it was not disclosed as early as it might or should have been). 

C. Analysis

Appellant contends that the
State failed to disclose exculpatory evidence. 
Specifically, he argues that the undisclosed police report revealed the
existence of an additional suspect, Glossen, who perfectly matched the suspect=s description in the aggravated robberies.  Appellant contends that if the evidence had
been disclosed, he could have investigated the other suspect, and there was a
reasonable probability that the outcome of the trial would have been different.









In the instant case, the
prosecution did not completely fail to disclose the alleged exculpatory
evidence, rather its disclosure was simply untimely as the State disclosed the
information immediately before trial.  When
the issue is the failure to timely disclose, Appellant must show that had the
State disclosed the potentially exculpatory material earlier, there is a
reasonable probability that the outcome of the proceeding would have been
different.[12]  Hampton, 86 S.W.3d at 613 n.26; Olivarez,
171 S.W.3d at 290.  













We determine that Appellant
has failed to make such a showing.  Even
if the evidence regarding the other suspect, Glossen, had been divulged to
Appellant at an earlier time, Appellant has failed to show that there is a
reasonable probability that the outcome of the trial would have been different.
See Hampton, 86 S.W.3d at 613 n.26. 
Indeed, although Appellant asserts that further investigation of Glossen
could have resulted in a different outcome of his trial, the record does not
support such a claim.  In contrast, the
record clearly shows that Glossen=s status as a suspect was very limited.  Although Glossen was initially detained
because he was driving a light-colored Impala, a vehicle matching the
description of the robbery suspect=s car, Glossen=s status as
a suspect was quickly terminated when Ms. Aguilar was given the opportunity to
identify Glossen, and she informed the police that he was not the individual
who had robbed her.  Her determination
was based on the differences between the clothes Glossen was wearing and the
clothes that the robbery suspect was wearing when he robbed her at gunpoint.[13]  Despite Appellant=s contention, earlier disclosure of the police report and the
information regarding Glossen would not have changed the fact that Ms. Aguilar
indicated that Glossen was not the individual who robbed her and that Appellant
was the robber.  Nor would further
investigation of Glossen change the fact that personal items belonging to both
Ms. Aguilar and the other complainant, Lovaglio, were found in Appellant=s possession.  We determine that
based on the record, there is not a reasonable probability that had the State
disclosed the information regarding Glossen at an earlier time, the outcome of
the proceeding would have been different. 
Hampton, 86 S.W.3d at 613 n.26; Olivarez, 171 S.W.3d at
290.  








Moreover, the record shows
that Appellant received the information regarding the other suspect in time to
put it to effective use at trial.  See
Givens, 749 S.W.2d at 957.  The State
first introduced the information regarding Glossen at the pretrial hearing on a
variety of motions raised by Appellant. 
Appellant was again made aware of the information regarding Glossen
during the State=s direct
examination of Detective Wisenger, the detective assigned to investigate the
robberies.  During Detective Wisenger=s testimony, the State offered into evidence a police report prepared
by the officer who had detained Glossen on the Tollway.  Appellant then had the opportunity to
cross-examine Detective Wisenger regarding Glossen=s detention.  The record clearly
shows that Appellant discovered the information early enough to make use of it
at trial.  See Givens, 749 S.W.2d
at 957 (stating that where appellant learned of an exculpatory statement when
it was introduced into evidence and read into the record in the presence of the
jury, he had discovered the statement in enough time to make use of it at
trial).  Therefore, because Appellant
received the material in time to put it to effective use at trial, his
conviction should not be reversed simply because the information was not
disclosed as early as it might or should have been.  See id. (citing United States v.
McKinney, 758 F.2d 1036, 1050 (5th Cir. 1985)).  

Because Appellant has failed
to establish a Brady violation, we overrule his fifth point. 

VI.  Improper Comments

In Appellant=s sixth point, he argues that the State violated his right against
self-incrimination by commenting on his failure to testify.  In Appellant=s seventh point, he argues that the State repeatedly made improper
arguments to the jury which were not cured by the trial court=s instruction to disregard. 

A. Applicable Law

To be permissible, the State=s jury argument
must fall within one of the following four general areas: (1) summation of the
evidence; (2) reasonable deduction from the evidence; (3) answer to argument of
opposing counsel; or (4) plea for law enforcement.  Felder v. State, 848 S.W.2d 85, 94-95
(Tex. Crim. App. 1992), cert. denied, 510 U.S. 829 (1993); Alejandro
v. State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).          








When the trial court sustains an objection and instructs
the jury to disregard but denies a defendant=s motion for a
mistrial, the issue is whether the trial court abused its discretion in denying
the mistrial.  Hawkins v. State,
135 S.W.3d 72, 77 (Tex. Crim. App. 2004); Faulkner v. State, 940 S.W.2d
308, 312 (Tex. App.CFort Worth 1997, pet. ref=d) (en banc op. on
reh=g).  Only in extreme circumstances, where the
prejudice is incurable, will a mistrial be required.@  Archie v. State, 221 S.W.3d 695, 699 (Tex.
Crim. App. 2007); Hawkins, 135 S.W.3d at 77. 

In determining whether the
trial court abused its discretion in denying the mistrial, we balance three
factors: (1) severity of the misconduct (the magnitude of the prejudicial effect
of the prosecutor=s remarks; (2) measures adopted to cure
the misconduct (the efficacy of any cautionary instruction by the judge); and
(3) the certainty of conviction absent the misconduct (the strength of the
evidence supporting the conviction). 
Archie, 221 S.W.3d at 700.








Except in the most blatant cases, an instruction to
disregard a comment on an accused's failure to testify will cure any
prejudicial effect caused by the improper comment.  Moore v. State, 999 S.W.2d 385, 405
(Tex. Crim. App. 1999), cert. denied, 530 U.S. 1216 (2000); see
Archie, 221 S.W.3d at 700.  We
presume the jury complied with an instruction to disregard improper jury
argument.  Wesbrook v. State, 29
S.W.3d 103, 116 (Tex. Crim. App. 2000). In assessing the curative effect of the
court=s instruction to
disregard, the correct inquiry is whether the argument was extreme, manifestly
improper, injected new and harmful facts into the case, or violated a mandatory
statutory provision and was thus so inflammatory that an instruction to
disregard could not cure its prejudicial effect.  Faulkner, 940 S.W.2d at 312.  Only offensive or flagrant error warrants
reversal when there has been an instruction to disregard.  Wesbrook, 29 S.W.3d at 116.  If the instruction cured any harm caused by
the improper argument, a reviewing court should find that the trial court did
not err.  Dinkins v. State, 894
S.W.2d 330, 357 (Tex. Crim. App. 1995); Faulkner, 940 S.W.2d at 312. 

B. Alleged Improper Comment on Appellant=s Failure to Testify

Appellant did not testify at trial.  During the State=s closing argument, the following exchange occurred:

[State]:
I=ve
got a question.  I=ve
got a question.  What is [Appellant]
doing with her checkbook?  

 

[Defense
Counsel]: Excuse me, Your honor, I=m going to object.  That=s a comment on my client=s
failure to testify, and it=s improper. 

 

[Trial
Court]: Sustained.

 

[Defense
Counsel]: Ask the jury to be instructed to disregard the last comment by the
prosecutor. 

 

[Trial Court]: The jury is instructed to disregard the last comment by
the prosecutor.  

 

[Defense
Counsel]: Because of the nature of the comment, we respectfully request a
mistrial. 

 

[Trial
Court]: Mistrial is denied. 













Appellant argues that this exchange was an improper comment
on his failure to testify.  After
reviewing the record, we determine that even if the prosecutor=s statement in
this case was a comment on Appellant=s failure to
testify, the severity of the misconduct was minor.  The record shows that the as soon at the
prosecutor made the remark, the trial court sustained Appellant=s objection and
immediately instructed the jury to disregard the statement.  We presume the jury complied with the
instruction.[14]  See Wesbrook, 29 S.W.3d at 116.  The record shows that the trial court gave
the jury the precise instruction that Appellant requested, and that the jury
was again instructed in the charge that Ayou cannot, and
must not, refer to or allude to the election of any defendant to not testify
when you enter your deliberations . . . A  Appellant has made no allegation that either
of these instructions were deficient.  It
is evident that the curative measures taken by the trial court were effective
to ameliorate any potential harm that may have resulted from the prosecution=s improper
comment.  See Simpson v. State,
119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (stating that ordinarily, a prompt
instruction to disregard will cure error associated with an improper jury
argument).  

Moreover, in considering the strength of the State=s case and the
certainty of Appellant=s conviction, the record shows that the
two armed robberies occurred in different apartment parking lots that were
located in close proximity to one another. 
The complainants testified that the robber, a black man of medium height
and build who was wearing long shorts and a mask, fled the scene in a light-colored
Impala.  Subsequently, Appellant, a black
man matching this description, and driving a silver Impala, was apprehended at
a nearby location shortly after the second robbery.  Furthermore, the record shows that the police
officer=s search of
Appellant=s car resulted in the discovery of a mask,
gun, and personal property of both complainants of the aggravated
robberies.  This evidence was substantial
and highly persuasive; thus we determine that in light of this evidence, the
certainty of Appellant=s convictions was high.  

Under the facts of this case, we conclude that the trial
court sufficiently ameliorated any potential harm caused by the prosecutor=s closing argument
by sustaining Appellant=s objection and instructing the jury to
disregard the comment.  Accordingly, we
overrule Appellant=s sixth point.








C. Alleged Improper Jury Arguments 

During closing argument the
State made the following arguments which Appellant contends were improper.  

1. Argument One

[State]:
. . . And, of course, we know that [Appellant] didn=t
borrow the car.  The evidence is, of
course, that he=s on
the rental agreement for that car.  There=s no
set of circumstances which anything else fits reasonably and rationally and
when that=s the
case, that=s the
legal definition of excluding the reasonable doubt possibility.

 

[Defense Counsel]: Excuse me.
I=m going to object.  There is no
legal definition.  The jury should go by
what=s in the Court=s charge and
the Court=s
instructions to the jury, not by what the prosecutor says.  

The trial court sustained
Appellant=s objection
and instructed the jury to disregard the prosecutor=s comment.  Appellant did not
request a motion for mistrial. 








Here, Appellant argues that
the prosecutor=s statement
was improper because it essentially made up a definition of reasonable doubt
and asserted it as the legal definition of reasonable doubt.  However, based on our review of the record
and established law, we hold that Appellant forfeited his right to bring his
complaint regarding the argument because he failed to pursue his objection
until an adverse ruling at trial.  See
Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (holding that a
defendant=s failure to
object to a jury argument or a defendant=s failure to pursue to an adverse ruling on his objection to a jury
argument forfeits his right to complain about the argument on appeal).[15]

2. Argument Two

Appellant also argues that the following
statement was improper:

[Prosecutor]:
. . . You=ve
got a guyBif I
walked up to you on the streetBif I walked up to you on the
street right now, if you weren=t sitting in that jury box,
and I said [l]et [sic] me give you a hypothetical, I=ve
got some aggravated robbery cases I want you to think about, a woman is robbed
at gunpoint by a man wearing a ski mask, black man, black male. 

 

[Defense
Counsel]: Excuse me, Your Honor.  I=m
going to object. I don=t
believe this is proper.  It=s closing
argument, not a plea for law enforcement. 


 

Again, the trial court
sustained Appellant=s objection
and instructed the jury to disregard the prosecutor=s comment.  The trial court
denied Appellant=s request
for a mistrial. 








Texas Rule of Appellate
Procedure 33.1(a)(1)(A) provides, in relevant part, that for a complaint to be
presented on appeal, a timely request, objection, or motion must have been made
to the trial court, which Astate[s] the grounds for the ruling that the complaining party sought
from the trial court with sufficient specificity to make the trial court aware
of the complaint, unless the specific grounds were apparent from the context.@  Tex. R. App. P. 33.1(a)(1); Heidelberg
v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004).  Additionally, it is well settled that the
legal basis of a complaint raised on appeal cannot vary from that raised at
trial.  Heidelberg, 144 S.W.3d at
537; Salinas v. State, 166 S.W.3d 368, 372 (Tex. App.CFort Worth 2005, pet. ref=d). 








Our review of the record
shows that Appellant=s objection
at trial does not comport with his objection on appeal.  At trial, Appellant objected because Ahe did not believe [the argument] is proper.  It=s closing argument, not a plea for law enforcement.@  However, on appeal, Appellant
argues that the prosecutor=s argument was the State=s indirect attempt to lower its burden of proof.[16]  Specifically, Appellant contends that the
State=s improper argument demonstrates that the prosecutor was Aconsciously and actively trying to persuade the jury to disregard the
law in order to obtain a conviction,@ and that the argument was therefore, unable to be cured by the
instruction to disregard.  Because
Appellant=s complaint
on appeal does not comport with his objection at trial, we hold that his
complaint was not preserved for review.  See
Heidelberg, 144 S.W.3d at 537; Salinas, 166 S.W.3d at 372.  Therefore, we overrule Appellant=s seventh point. 

VII. Conclusion

Having overruled Appellant=s seven points, we affirm the judgment of the trial court.

 

BOB MCCOY

JUSTICE

 

PANEL A:   CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
April 24, 2008











[1]See Tex. R. App. P. 47.4.





[2]Texas Code of Criminal Procedure
article 2.01 states that A[e]ach district attorney shall
represent the State in all criminal cases in the district courts of his
district and in appeals therefrom, except in cases where he has been, before
his election, employed adversely.@  Tex. Code Crim. Proc. Ann. art. 2.01
(Vernon 2005). 

 





[3]A trial court can remove a district
attorney only for one of three causes: (1) incompetency; (2) official
misconduct; or (3) intoxication under section 87.013, and only after the trial
by jury mandated.  State ex rel.
Eidson v. Edwards, 793 S.W.2d 1, 5 (Tex. Crim. App. 1990). 





[4]The trial court overruled Appellant=s 403, hearsay, and confrontation
clause objections at the pretrial hearing on Appellant=s motion in limine, and again at
trial.  Upon Appellant=s request, the trial court granted a
running objection to this line of questioning. 





[5]Officer Curtis, whose squad car was
an Impala, confirmed with Jorge Aguilar that the car the suspect entered was
also an Impala. 





[6]Officer Curtis=s testimony regarding the dispatch
call included the following: 

 

Q: . . . [D]id dispatch
notify you of anything else to be on the lookout for? 

 

A: I heard a vehicle description of
a light-colored or silver four-door car that was leaving the area. 

 

Q: Does that fit the description of
a Chevrolet Impala?

 

A: It would. 

 

Q: Four-door car? And did that
match the description that was given to you by Mr. and Mrs. Aguilar? 

 

A: It did. 

 

Q: Okay. Aside from the difference
between white and silver, did it match the description in terms of the type of
vehicle from the vehicle description given in Officer Wolf=s report in connection with Brandy
Lovaglio?

 

A: It did, yes, sir.





[7]Officer Curtis testified that he
responded to the dispatch to the Aguilar robbery at 4:45 a.m. and that he
arrived at the Aguilars= apartment in less than ten
minutes.  Within approximately three to
four minutes of his arrival, Officer Curtis testified, he received the dispatch
call regarding another robbery attempt occurring nearby. 





[8]Officer Curtis testified that it
only took approximately fifteen seconds to drive from the location of the
second robbery to the location where dispatch said another robbery was
occurring. 





[9]Officer McDonald further stated on
cross-examination that she recovered property belonging to Ms. Aguilar from the
car, including a purse, makeup bag, cell phone and cash.  She also stated that there was a big box
located in the backseat of the car.





[10]To the extent that Appellant argues
that the improper admission of the evidence was harmful because the jury
assessed him eighteen years= imprisonment for each offense even though he was eligible
for probation, we evaluated the punishment phase of trial to determine whether
the introduction of the hearsay testimony affected his sentence.  Having done so, we determine that his
argument is without merit.  The record
shows that during the punishment phase of trial, the State made no reference to
Officer Curtis=s testimony regarding the dispatch
call he received.  Indeed, the only
action the State took was to submit a certified copy of a judgment showing that
Appellant had previously been convicted for the offense of unlawful carrying of
a weapon in 1998.  The State then
rested.  Contrary to Appellant=s assertion, there is no evidence
that the erroneous admission of the hearsay testimony affected the assessment
of Appellant=s punishment.  





[11]A short time later, the State
informed the trial court that the police had detained the first individual
because he was driving an Impala on the Tollway, even though he was stopped a
number of miles away from where the aggravated robberies took place.  After Ms. Aguilar saw the individual and
determined that he was not the man who robbed her, the police discovered that
the man had outstanding warrants for his arrest.  He was arrested and the police found firearms
in his vehicle.  The State brought this
information to the trial court=s attention prior to the start of trial and outside of the
presence of the jury.





[12]In Brady itself, the
prosecution=s suppression of exculpatory
evidence did not come to light until Brady had been tried, convicted, and
sentenced, and after his conviction had been affirmed.  373 U.S. at 84, 83 S. Ct. at 1194; Palmer
v. State, 902 S.W.2d 561, 564‑65 (Tex. App.CHouston [1st Dist.] 1995, no pet.).


In contrast, where the prosecution
has not completely failed to disclose exculpatory evidence, but rather
disclosed Brady materials during an ongoing trial, then the inquiry is
whether the defendant was prejudiced by the tardy disclosure.  If the defendant received the material in
time to put it to effective use at trial, his conviction should not be reversed
simply because it was not disclosed as early as it might have and, indeed,
should have been.  373 U.S. at 84, 83 S.
Ct. at 1194.

 

 





[13]Ms. Aguilar testified that because
the first suspect=s pants were different-colored, Athey were not denim, they were
cloth,@ she determined that the suspect
was not the person that had robbed her. 

 





[14]After the trial court instructed
the jury to disregard the prosecutor=s comment, the prosecutor stated, ANow, you could wonder, well, I
guess it could be possible that these things [i.e. checkbook] were found, and
that when [Appellant=s] in the car later there could be
an innocent explanation for those things being in that car.@ 
Appellant asserts that this was a second comment on his failure to
testify made by the prosecutor and argues that this remark compounded the
prosecution=s earlier comment on Appellant=s failure to testify. However, our
review of the record shows that Appellant made no objection to this testimony. 





[15] The Texas Court of Criminal
Appeals reaffirmed its Cockrell holding in 

Mathis v. State, 67 S.W.3d 918, 927 (Tex. Crim.
App. 2002).  In that case, the court
stated that Aeven if the error was such that it
could not be cured by an instruction, appellant would be required to object and
request a mistrial. . . . Cockrell, [is] a case perfectly in
line with Rule of Appellate Procedure 33.1 and the policies underlying
preservation of error.@ 
Id. 





[16]Appellant argued that the State=s first argument was the State=s direct attempt to lower
its burden of proof, whereas the State=s second argument was its indirect attempt to lower
its burden of proof.