**Marshall L. LAJOIE, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–06–289–CR.**

Court of Appeals of Texas, Fort Worth.

May 31, 2007.

Publication Ordered Sept. 18, 2007.

Brian W. Wice, Houston, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Asst. Crim. Dist. Atty. and Chief of the Appellate Section, Tanya S. Dohoney, Tameika Badger, Kalere Jacob–Coleman, Asst. Crim. District Attys., Fort Worth, for Appellee.

Panel B: LIVINGSTON, WALKER, and McCOY, JJ.

## MEMORANDUM OPINION[1]

BOB McCOY, Justice.

### I. Introduction

In two points, Appellant Marshall L. Lajoie appeals the trial court's refusal to suppress portions of his DWI video.

---

1. *See* TEX.R.APP. P. 47.4.

## II. Factual and Procedural Background

This is the case of the quick invocation of counsel.

While on patrol around midnight on December 27, 2005, North Richland Hills Officer Mike Nelson observed Lajoie's SUV traveling on Highway 26. Lajoie's SUV appeared to have no license plate light. While following the SUV, Officer Nelson turned his headlights off and on and confirmed that the license plate had no light.

Officer Nelson then attempted to initiate a traffic stop by turning on his overhead lights; however, Lajoie continued driving and passed through two intersections. Officer Nelson then sounded his siren, and Lajoie pulled into a gas station parking lot.

After approaching Lajoie in his SUV, Officer Nelson detected the smell of alcohol on Lajoie's breath and noticed him to have slow and slurred speech. Officer Nelson notified Lajoie of the reason he had pulled him over and proceeded to ask him for his driver's license and insurance and also asked him where he had been. Lajoie claimed that he could not understand the question and inquired whether he was under arrest. Officer Nelson informed Lajoie that he was being detained on a traffic violation. Officer Nelson asked Lajoie whether he had been drinking. Lajoie replied that he did not care to respond because he believed his attorney would tell him not to answer any questions.

Shortly thereafter, Lajoie exited his SUV to make his own inspection of the absence of his license plate light. Officer Nelson proceeded to conduct field sobriety tests on Lajoie. After completing the horizontal gaze nystagmus test, Lajoie declined to participate in any further field

sobriety tests, twice stating that he wished to contact his attorney. Officer Nelson informed Lajoie that "is not an option right now." Officer Nelson then placed Lajoie under arrest. The entire traffic stop and arrest was caught on Officer Nelson's in-car camera. Officer Nelson then transported Lajoie to jail where he was also videotaped. While Lajoie was inside the intoxilyzer room, Officer Nelson read Lajoie the statutory warning and requested a breath specimen. Lajoie again responded that he wanted to wait until he could consult with his lawyer. After Lajoie refused the breath test, Officer Nelson read him his *Miranda* rights. When Officer Nelson asked Lajoie whether he wanted to give up those rights and to talk to him, Lajoie said "no" and the interview was terminated.

A jury convicted Lajoie of driving while intoxicated. The trial court sentenced him to two years' community supervision and a fine in accordance with the jury's assessment. This appeal followed.

### III. Preservation of Error

In his first point, Lajoie asserts that the trial court's refusal to suppress the portions of the video in which he requests and mentions an attorney was error. The State first responds that Lajoie's first point has not been preserved for our review. We disagree.

#### A. Applicable Law

■ To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex.R.App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim.App.1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999). Further, the trial court must

have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R.App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex.Crim.App.2004).

#### B. Application

#### 1. Pretrial Motions to Suppress

■ The State first argues that Lajoie failed to preserve error because he did not get a ruling on his pretrial motions to suppress. We agree that Lajoie did not get rulings on his motions. However, even the failure to file a pretrial motion does not waive a complaint of improperly obtained evidence. *Johnson v. State*, 743 S.W.2d 307, 309 (Tex.App.-San Antonio 1987, pet. ref'd). Thus, Lajoie could still preserve error without getting a ruling on his pretrial motions.

#### 2. Failure to Object Each Time Evidence Offered

■ The State next asserts that Lajoie failed to preserve error because he did not object each and every time the objectionable evidence was introduced. As stated above, the portions of the DWI video that Lajoie felt were objectionable were the instances when he requested or mentioned an attorney. However, before the DWI video was published to the jury, the State called Officer Nelson to testify. After it was established that Officer Nelson had pulled Lajoie over for a traffic violation, Officer Nelson testified as follows:

Q. [State] What did you observe about the Defendant?

A. I observed that his speech was slurred and I smelled the odor of alcoholic beverage on his breath.

Q. Did you ask the Defendant for any identifying information?

A. Yes, ma'am.

Q. What did he give you?

A. He gave me his driver's license and his insurance card, which I requested.

Q. Did you ask him any other questions?

A. Yes ma'am. I asked him where he was coming from.

Q. And what did he say?

A. He appeared that he didn't understand the question. I repeated the question. And I believe he said he wanted—or asked—he asked if he was under arrest at that point.

Q. Did you ask him how much he had to drink?

A. Yes ma'am. I did.

Q. And what did he say?

A. He said, "I believe my lawyer would—["]

[Defense Counsel]: Your honor, could I just have a *running objection* under the aforesaid Fifth, Sixth, Fourteenth Amendment right to counsel under 402, 403 as earlier stated?

The Court: Yes. [Emphasis supplied.]

Later on, Officer Nelson's testimony turned to the field sobriety tests. After he recounted Lajoie's performance on the horizontal gaze nystagmus test, the following took place:

Q. After the horizontal gaze nystagmus evaluation what did you do next?

A. I was going to attempt to conduct the other two field sobriety tests, which is the walk and turn and one leg stand.

Q. Did you ask the Defendant if he would cooperate with those evaluations?

A. Yes.

Q. And did he?

A. No. He did not. He—no, he did not.

Q. Did he give you any reason why he didn't want to?

A. He stated his lawyer would advise him not to do that.

Q. At this point—

[Defense Counsel]: Your Honor, excuse me, with [a] *running objection* with reference to any reference to a lawyer—request for a lawyer.

The Court: That statement's overruled.[2] [Emphasis supplied.]

■ The State is correct that an error in the admission of evidence is cured when the same evidence comes in elsewhere without objection. *Valle v. State*, 109 S.W.3d 500, 509 (Tex.Crim.App.2003). However, one of the exceptions to the requirement for a contemporaneous objection is a *running objection. Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991). As shown above, Lajoie asked for *running objections* and was therefore not required to object each and every time the same evidence was offered. *See id.*

■ Furthermore, Lajoie cannot be faulted for pursuing testimony on cross-examination about his request for counsel because the trial judge had already ruled that testimony regarding that subject was admissible. A defendant is permitted to offer evidence identical to that which he objected to earlier to rebut, destroy, or explain the previously admitted evidence. *Leday v. State*, 983 S.W.2d 713, 718–19 (Tex.Crim.App.1998); *Rogers v. State*, 853 S.W.2d 29, 35 (Tex.Crim.App.1993). That is exactly what Lajoie did here.

### 3. Affirmative Waiver

The State next contends that Lajoie affirmatively waived any complaint to the

---

**2.** We read this statement to be a reaffirmation by the trial court that Lajoie's attorney statements were admissible in accordance with the trial court's granting of Lajoie's first running objection.

video. When the video was offered at trial, Lajoie's counsel responded, "[N]o objection from the Defense, with exception to earlier pre-trial motions and requests for running objections." The State points out that nothing was preserved from the pretrial motions because the court never gave a ruling. However, as we have held above, Lajoie's requests for running objections were effectual. Thus, Lajoie did not affirmatively waive his complaints about the video.

### 4. Lack of Specificity and Adverse Ruling

■ The State next contends that Lajoie did not preserve error because his objections lacked specificity and he failed to get adverse rulings on his objections. Part of the State's argument again deals with Lajoie's failure to get a ruling on his pretrial motions to suppress. Again, as stated above, even the failure to file a pretrial motion does not waive a complaint of improperly obtained evidence. *Johnson*, 743 S.W.2d at 309. Thus, Lajoie's failure to obtain an adverse ruling on those motions does not necessarily mean that the alleged error was not preserved.

At trial Lajoie objected to Officer Nelson's testimony "under the *aforesaid* Fifth, Sixth, Fourteenth Amendment right to counsel under 402, 403 *as earlier stated.*" [Emphasis supplied.] The State seems to focus on the emphasized terms claiming that Lajoie must have either been referring to his pretrial statements on which he failed to get a ruling or to some previous unrecorded discussion that "probably took place after the lunch recess." Regardless of what prior objection Lajoie was referring to, we do not find that to be determinative.

■ If it is apparent from the record that the trial court understood the objection and its grounds, error is preserved.

*Dixon v. State*, 928 S.W.2d 564, 564–65 (Tex.Crim.App.1996). Whether the specific grounds for the objection were apparent from the context of the objection is determined by looking at each situation individually as it arises. *Heidelberg v. State*, 144 S.W.3d 535, 538 (Tex.Crim.App.2004). Here it is apparent from the record that Lajoie was objecting to evidence of his requesting counsel during the DWI investigation. Moreover, it is clear on what grounds he was relying for his objections—the right to counsel under the Fifth, Sixth, Fourteenth Amendments and evidence rules 402 and 403.

■ The State also contends that the court's "yes" reply to Lajoie's request for a running objection does not amount to an adverse ruling. But by asking for and receiving a running objection to testimony Lajoie felt was in error, Lajoie received an adverse ruling. Lajoie wanted the evidence regarding his desire to speak to an attorney not be presented to the jury. The trial court disagreed and thus Lajoie sought and received a running objection; by doing so, he preserved this alleged error. Even if we held that the trial court's "yes" response was not an express ruling, error would still preserved because a trial court's ruling may be *implied* under Texas Rule of Appellate Procedure 33.1(a)(2). *Montanez v. State*, 195 S.W.3d 101, 105 (Tex.Crim.App.2006).

■ The State also argues that because the trial court responded to one of Lajoie's objections with that "*statement's* overruled" that Lajoie's objection was somehow ineffectual. Again, if it is apparent from the record that the trial court understood the objection and its grounds, error is preserved. *Dixon*, 928 S.W.2d at 564–65. Lajoie had made clear to the trial court his desire not to have evidence of his repeated requests for counsel presented to the jury. Under these circumstances, we

again hold that it is apparent from the record that the trial court understood the objection and its grounds; thus error is preserved.

### 5. Publishing of the Video

 Finally, the State asserts that Lajoie did not preserve error because the record is silent as to what portions of the video were published to the jury. The State attempts analogize the situation here with a scenario in which a record does not include the exhibit at all, citing *Tutt v. State,* 940 S.W.2d 114, 122 (Tex.App.-Tyler 1996, pet. ref'd) (holding that when video of DWI arrest played before the jury, but not introduced, waiver occurred), and *Garcia v. State,* 901 S.W.2d 724, 729 (Tex. App.-Houston [14th Dist.] 1995, pet. ref'd) (holding that defendant waived error regarding the admission of evidence because the videotape was not included in the record). However, as the State acknowledges, the video here was introduced and included in the record. The State has not cited us to any authority, nor have we found any, that supports the contention that an appellant fails to preserve error when it is not exactly clear what portions of a video exhibit were published to the jury.

Here, we have been able to review the exhibit in question. The State points out that during the presentation of the video, the video was stopped and then skipped ahead to the next "relevant portion." It is unclear what portion of the video was skipped and not shown to the jury. The State argues that this somehow makes Lajoie's alleged error not preserved. However, the record as a whole clearly indicates what Lajoie's complaints were with the video—he did not want to jury to hear him repeatedly mention an attorney—and that at least some of that evidence was presented to the jury. Consequently, when the State introduced the video, Lajoie was prompted to again reference his running objections which are discussed above.

Under these facts, we hold that Lajoie did preserve his first point.

## IV. Lajoie's Repeated Requests for Counsel

Again, Lajoie argues that the trial court's refusal to suppress the portions of the video in which he requests and mentions an attorney was error. We agree.

### A. Abuse of Discretion

 The standard of review for a trial court's admission of evidence is abuse of discretion, and wide discretion is afforded to the trial judge. *Theus v. State,* 845 S.W.2d 874, 881 (Tex.Crim.App.1992). The trial court's decision should be reversed on appeal only if there is a showing of a clear abuse of discretion. *Id.* at 881. Only if the court's decision falls outside the "zone of reasonable disagreement," has it abused its discretion. *Rankin v. State,* 974 S.W.2d 707, 718 (Tex.Crim.App.1996) (op. on reh'g); *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g).

### B. Application

 The State contends that no error occurred under *Griffith v. State.* 55 S.W.3d 598 (Tex.Crim.App.2001). In *Griffith,* the appellant was asked to take a breath alcohol test and replied that he wanted to consult his lawyer before deciding whether to take the test. *Id.* at 600. This exchange was captured on video and presented to the jury. *Id.* at 600–01 (stating that appellant's request for an attorney was cloaked around his refusal to take the [breath]-alcohol test, which has statutorily-mandated probative value, as did his speech pattern if it was impaired). Here Lajoie mentioned or asked for counsel not only when Officer Nelson asked him to

take the breath test, but in other instances as well. Moreover, there was adequate dialog by Lajoie throughout the video that did not involve him asking for an attorney from which the jury could have observed his speech pattern.

The main thrust of the State's argument here is that because Lajoie was not under custodial interrogation, nor had judicial proceedings been initiated, he was not yet entitled to an attorney under the Fifth or Sixth Amendments. However, Lajoie's contention is that the trial court erred by allowing the jury to hear the portion of the videotape in which he invoked the right to counsel because, even if he had no right to an attorney when he invoked it, he was prejudiced when the jury heard him ask for an attorney. We agree.

■■■ Lajoie's objections were based not only on the Fifth, Sixth, and Fourteenth Amendments, but also on Texas Rules of Evidence 402 and 403. Rule 402 states that relevant evidence is admissible. TEX.R. EVID. 402. Rule 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." TEX.R. EVID. 403. When conducting an analysis under rule 403 a trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Gigliobianco v. State,* 210 S.W.3d 637, 641–42 (Tex.Crim.App.2006).

Here the evidence of Lajoie asking for an attorney does have some probative value as evidence of his speech pattern on the night of his arrest. However, we cannot say that the State had a distinct need for this evidence in light of other portions of the video which offer just as much probative evidence of Lajoie's speech pattern that night. Furthermore, we believe that presenting the jury with this evidence certainly could lead to a decision on an improper basis, i.e. anyone who immediately and repeatedly asks for an attorney must be guilty. As such, this evidence had a tendency to be given undue weight by the jury in deciding Lajoie's guilt. Therefore, we hold that the evidence of Lajoie mentioning an attorney was inadmissible because its probative value was substantially outweighed by the danger of unfair prejudice. *See* TEX.R. EVID. 403.

## C. Harm Analysis

■■■ Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. TEX.R.APP. P. 44.2. If the error is constitutional, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction or punishment. TEX.R.APP. P. 44.2(a). Otherwise, we apply rule 44.2(b) and disregard the error if it did not affect appellant's substantial rights. TEX.R.APP. P. 44.2(b); *see Mosley v. State,* 983 S.W.2d 249, 259 (Tex. Crim.App.1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999); *Coggeshall v. State,* 961 S.W.2d 639, 642–43 (Tex.App.-Fort Worth 1998, pet. ref'd).

■■■ Lajoie argues that this error is constitutional; however, we disagree. At first glance it seems obvious that Lajoie's attempts to invoke his right to counsel would be of constitutional dimension.

However, as discussed above, at the time Lajoie referenced his right to counsel, he was not under custodial interrogation nor had judicial proceedings been initiated against him. Accordingly, neither his Fifth nor his Sixth Amendment right to counsel had not yet attached. *See Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966) (stating that custodial interrogation is a prerequisite to the implication of the Fifth Amendment right to counsel); *Griffith,* 55 S.W.3d at 603 (stating that Sixth Amendment right to counsel arises only after adversary judicial proceedings have been initiated). Lajoie even concedes in his brief that he was merely being detained for a traffic offense. Based on this and on Lajoie's Rule 403 objection that this evidence was substantially more prejudicial than probative, it is clear that the error was nonconstitutional.

■ Because we determine that the error is not constitutional, rule 44.2(b) is applicable. TEX.R.APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); *Coggeshall,* 961 S.W.2d at 643. In making this determination, we review the record as a whole. *See Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

■ The State argues that the overwhelming evidence of Lajoie's guilt renders the error harmless. Although overwhelming evidence of guilt is a factor to consider in a harm analysis, it is not the only factor; other factors include the nature of the evidence supporting the verdict, the character of the alleged error, and how the evidence might be considered in connection with other evidence in the case.

*Motilla v. State,* 78 S.W.3d 352, 356 (Tex. Crim.App.2002).

■ Here the evidence of guilt was hardly overwhelming. The evidence supporting guilt was Lajoie's refusal to perform the breath test, his slow speech, and his poor performance on the horizontal gaze nystagmus test. The only evidence that went squarely to whether Lajoie had lost the normal use of his mental faculties by the consumption of alcohol was Officer Nelson's opinion.

Additionally, the jury was allowed to hear Lajoie state multiple times that he would like to consult a lawyer and make similar references. Moreover, during closing argument the State argued as follows:

> [T]he Defendant's response [to Officer Nelson] is first, "Am I under arrest?" Why are we jumping from a traffic stop to arrest? He knew he had done something wrong. He knew that he should [not] have been out on that road and that's why he initially asked the officer, well, am I under arrest. The officer told you normally in traffic stops, people, they don't jump right to arrest. *They don't jump right to, I want my lawyer when [the] officer told him he was only stopping him for a traffic violation.* The Defendant knew he was guilty and he began to panic and he began to give us these other signs of intoxication.
>
> . . . .
>
> It's American to take responsibility for your actions. It's American to own up when you do something wrong, and the Defendant is not owning up. That's un-American. *You send him a message that you will not get off because you refuse to cooperate with criminal investigations. Don't let him [go] free because he refused to cooperate.* Send a message and find him guilty. [Emphasis supplied.]

After reviewing the whole record, we believe that it is clear that not only was evidence of Lajoie asking for an attorney before the jury, but that the State overtly emphasized and relied on that evidence as proof of his guilt. Therefore, we hold that the error had a substantial and injurious effect or influence in determining the jury's verdict and, thus, affected Lajoie's substantial right. *See King*, 953 S.W.2d at 271. Accordingly, we sustain Lajoie's first point.[3]

## V. Conclusion

Having sustained Lajoie's first point, we reverse the trial court's judgment and remand for proceedings consistent with this opinion.

---

**3.** Because of our disposition of Lajoie's first point, we need not reach his second point in which he argues that the trial court erred by allowing the jury to see the portion of the video in which he invoked his right to remain silent and terminated the interview with Officer Nelson.