

NUMBER 13-11-00784-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ANGELICA MARIE ZAPATA,                                    Appellant,

v.

THE STATE OF TEXAS,                                        Appellee.

## On appeal from the County Court at Law No. 2
## of Victoria County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Vela
### Memorandum Opinion by Justice Garza

A jury convicted appellant, Angelica Marie Zapata, of driving while intoxicated (DWI), a class B misdemeanor offense. *See* TEX. PENAL CODE ANN. § 49.04(a), (b) (West Supp. 2011). The trial court sentenced appellant to 180 days' confinement in county jail, suspended the sentence, and placed her on community supervision for two

years. The trial court also assessed a $500 fine and court costs, ordered community service and $800 in restitution to the accident victim, and ordered appellant to serve ten days in county jail. By a single issue, appellant contends the trial court erred in denying her motion to suppress. We affirm, as modified.

## I. BACKGROUND

Matt Luther, a City of Victoria police officer, testified that around 3:30 a.m. on March 21, 2011, he was dispatched to the scene of an auto accident. Officer Luther observed a maroon vehicle that had apparently struck a parked red Mustang. Officer Luther spoke with the passenger of the maroon vehicle and several witnesses gathered at the scene. Another police officer, Dennis Payne, arrived and was asked to locate the maroon vehicle's driver—later identified as appellant—who reportedly left the scene on foot. Officer Payne located appellant, who said she had been a passenger in the vehicle, but was not the driver. Officer Payne noticed that appellant smelled of alcohol, had bloodshot eyes and slurred speech, and was very unsteady on her feet. Officer Payne walked appellant back to the accident scene to be interviewed by the other officers investigating the accident.

Officer Luther testified that when appellant was returned to the scene, he approached her to obtain identification and insurance information. He noticed that appellant smelled of alcohol, had slurred speech, and was unsteady. Appellant pulled out some papers that were stuffed into her shirt and produced a health insurance card, but was unable to provide any identification documents.

Police Officer Branden Allen testified that a few minutes after he arrived at the accident site, appellant was escorted back to the scene, and he spoke with her. Officer

2

Allen stated that appellant smelled of alcohol, had bloodshot eyes, and had various papers stuffed into her bra and pockets. Appellant denied that she had been driving the maroon vehicle and identified the driver as "Mary," the front-seat passenger. Officer Allen's vehicle's dashboard video camera recorded his exchange with appellant. Officer Allen asked appellant to perform field sobriety tests, but she refused to cooperate. Appellant eventually produced a driver's license. Officer Allen testified that he was talking to appellant to determine whether she was intoxicated. Officer Allen testified that appellant was not under arrest, but neither was she free to leave; rather, she was detained while he conducted an investigation of the accident.

Officer Allen testified that when he attempted to administer a field sobriety test, appellant said she wanted to speak to a lawyer. According to Officer Allen, appellant was not under arrest at that time, and he continued to question her. Appellant's counsel objected "to any testimony about [appellant's] behavior, statements or anything past the point she asked for an attorney." Outside the presence of the jury, the trial court reviewed the DVD recording of Officer Allen questioning appellant. The trial court overruled appellant's motion to suppress. Defense counsel then objected "under [rule of evidence] 403," arguing that "the video is more prejudicial than probative." The trial court also overruled this objection. Defense counsel then requested a "running objection under 38.22 and 403" to "[a]nything after the request for an attorney—any statement or evidence that [appellant] made past the request she made for an attorney."[1] The trial court noted the objection, and the trial continued. The DVD was

---

[1] We have reviewed the DVD. We note that prior to her formal arrest, appellant does not make any incriminating statements to Officer Allen. We agree with defense counsel's characterization that the DVD "shows [appellant] being basically belligerent with an officer, cursing." We also agree with the prosecutor's characterization that the DVD shows appellant making "inconsistent statements" and "that

3

admitted into evidence as State's Exhibit 1 and was shown to the jury.[2]

When Officer Allen resumed his testimony, he stated that he arrested appellant for driving while intoxicated. At 8:15 the following morning, appellant was transported to a facility for the purpose of providing a mandatory blood sample.

Pursuant to a request by appellant, the trial court issued the following relevant findings of fact and conclusions of law:

## FINDINGS OF FACT

. . . .

5. Officer Allen made contact with the Defendant, Angelica Zapata, who[m] he detained to determine her involvement in the auto accident.

. . . .

8. After the initial conversation with Defendant, Officer Allen also began to investigate whether or not the Defendant was intoxicated and began to administer the horizontal gaze nystagmus test (field sobriety test.)

9. At approximately 3:44 A.M. (time per video) shortly after making contact with Defendant, while Officer Allen was administering the field sobriety test, the Defendant made the following statement: "I want to call my lawyer because I wasn't even driving." A few seconds later, the Defendant makes a second statement in which she states, "I want to call the lawyer."

10. The Defendant was not under arrest at the time that she made her request for a lawyer, and the Defendant was not handcuffed nor being physically restrained at the time.

---

her story makes absolutely no sense." *After* appellant was arrested and given *Miranda* warnings, Officer Allen asked appellant if she had been drinking and appellant responded, "Yes." After her arrest, appellant can be heard shouting repeatedly and aggressively off-camera, "I don't f*****g care 'cause I wasn't f*****g driving."

[2] We note that appellant filed a written motion to suppress all evidence regarding an analysis conducted on a blood specimen obtained from appellant. Appellant did not file a written motion to suppress "any statement or evidence" made after she requested to speak to an attorney. After the jury was selected but before the presentation of any evidence, appellant's counsel orally urged the suppression of appellant's videorecorded statements. The trial court held a hearing outside the presence of the jury. At the conclusion of the hearing, the trial court ruled that appellant's statements did not result from a custodial interrogation; the trial court denied the oral motion to suppress.

11.   The Defendant was not in a patrol car at the time she made her request for a lawyer.

12.   Officer Allen did not tell the Defendant she was under arrest nor did he tell her that she was not free to leave at the time of her request for a lawyer.

. . . .

14.   Officer Allen and the Defendant continued to converse regarding a set of keys and different documents located on her person which she dropped to the ground and as to who was driving the vehicle in the accident. Defendant's statements were confusing and contradictory indicating signs of intoxication.  The Defendant stated on several occasions that she was not the driver of the vehicle in the accident.  The Defendant continually made statements that were not responsive to any questions by the officer and volunteered information.

15.   The Defendant's counsel did not object to the statements made by Defendant in requesting a lawyer, but made a global objection as to the admissibility of Defendant's "behavior, statements or anything past the point she (the Defendant) asked for an attorney" on the video (State's Exhibit Number One.)  The Defendant's counsel did not identify the specific statements or behavior or other specific evidence that it was requesting the Court to suppress even after the Court inquired regarding what were the particular statements.

## CONCLUSIONS OF LAW

1.  Per Article 28.01 (Sec. 2) of the Texas Code of Criminal Procedure, the Defendant failed to raise the matters asserted by the oral Motion to Suppress at the pre-trial hearing and failed to show good cause why such matters should later be considered at trial; and therefore, should not have been allowed to be raised at trial.  Defendant failed to object to the evidence at the earliest possible opportunity.  *Marini v. State*, 593 S.W.2d 709 (Tex. Crim. App. 1980)[.]

. . . .

5.  At the time that the Defendant referenced her right to counsel, she was not in custody and not under custodial interrogation nor had judicial proceedings been initiated against her.  Accordingly, her Fifth and Sixth Amendment right to counsel had not yet attached.  *Lajoie v. State*, 237 S.W.3d 345 (Tex. App.—Fort Worth 2007, no pet.)[.]

6. There was not an incriminating statement made by Defendant where she clearly admitted to an element of the subject offense. The statements of Defendant were evidence of intoxication due to the confusing nature of what she said and how she stated it.

7. Defendant's global objection was not a timely, specific objection identifying the specific behavior, statements or other evidence of which Defendant complained. *Turner v. State,* 805 S.W.2d 423 (Tex. Crim. App. 1991); Texas Rules of Evidence 103. Consequently, due to the lack of specificity by the Defendant, the Court was unable to discern any potentially non-admissible evidence from admissible evidence.

8. Defendant had no right to counsel at the videotaping that was conducted prior to the filing of the DWI complaint before initiation of formal adversary proceedings. *Forte v. State*, 707 S.W.2d 89 (Tex. Crim. App. 1986)[.]

9. Officer Allen developed probable cause for the arrest of the Defendant for the subject offense at a later time in his investigation.

10. In accordance with the conclusions recited above, the Court admitted State's Exhibit Number One (audio and visual recording) into evidence.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Whether the trial court properly denied a defendant's motion to suppress is reviewed under a bifurcated standard of review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Scardino v. State*, 294 S.W.3d 401, 405 (Tex. App.— Corpus Christi 2009, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State,* 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). We give almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but apply a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility. *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). We view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24. We must uphold the trial

6

court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We will overturn the ruling only if it is "outside the zone of reasonable disagreement." *Martinez*, 348 S.W.3d at 922.

A trial court's ultimate "custody" determination "presents a 'mixed question of law and fact.'" *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112–13 (1995)). "Therefore, we afford almost total deference to a trial judge's 'custody' determination when the questions of historical fact turn on credibility and demeanor." *Id.* at 526–27. "Conversely, when the questions of historical fact do not turn on credibility and demeanor, we will review a trial judge's 'custody' determination de novo." *Id.* at 527.

As set forth in *Miranda v. Arizona*, police are required to warn suspects of certain constitutional rights prior to a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Article 38.22 of the Texas Code of Criminal Procedure also governs the admissibility of statements made during a custodial interrogation. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3 (West 2005). *Miranda* and article 38.22 warnings are necessary only when a person is subject to custodial interrogation. *Herrera*, 241 S.W.3d at 526 (stating that both article 38.22 and *Miranda* apply when persons are in custody and being interrogated).[3]

---

[3] *Miranda* warnings include a statement regarding the right to remain silent, that any statement made may be used as evidence, that you have the right to have an attorney present during questioning, and if you are unable to hire an attorney, you have the right to have an attorney appointed if you cannot afford one. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). These warnings largely overlap with those required by the Texas Code of Criminal Procedure, article 38.22, section 2(a), except that section 2(a) includes an additional warning that the accused "has the right to terminate the interview at any time[.]" TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a) (West 2005).

In determining whether an individual was in custody, the ultimate inquiry is whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *Rodriguez v. State*, 191 S.W.3d 428, 440 (Tex. App.— Corpus Christi 2006, pet. ref'd); *see Herrera*, 241 S.W.3d at 525. The determination depends on the objective circumstances, not on the subjective views of either the interrogating officers or the person being questioned. *Rodriguez*, 191 S.W.3d at 440. Moreover, the determination is made on an ad hoc basis. *Id.* at 440–41. At trial, the defendant bears the initial burden of proving that a statement was the product of custodial interrogation. *Herrera*, 241 S.W.3d at 526.

Four general situations may constitute custody for purposes of *Miranda* and article 38.22: (1) the suspect is physically deprived of his freedom of action in any significant way; (2) a law enforcement officer tells the suspect he is not free to leave; (3) law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; or (4) there is probable cause to arrest the suspect, and law enforcement officers do not tell the suspect he is free to leave. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996); *Rodriguez*, 191 S.W.3d at 441. In the first, second, and third situations, the restrictions upon freedom of movement must rise to the degree associated with an arrest as opposed to an investigative detention. *Dowthitt*, 931 S.W.2d at 255; *Rodriguez*, 191 S.W.3d at 441. With regard to the fourth scenario, the officers' knowledge of probable cause must be manifested to the subject. *Dowthitt*, 931 S.W.2d at 255; *Rodriguez*, 191 S.W.3d at 441. "[T]he question turns on whether, under the

8

facts and circumstances of the case, 'a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave.'" *Ervin v. State*, 333 S.W.3d 187, 205 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (quoting *Nguyen v. State*, 292 S.W.3d 671, 678 (Tex. Crim. App. 2009)).

A person held for an investigative detention is not in custody. *Campbell v. State*, 325 S.W.3d 223, 233 (Tex. App.—Fort Worth 2010, no pet.) (citing *Dowthitt*, 931 S.W.2d at 255). Persons who are temporarily detained pursuant to traffic stops to investigate drunken driving are not, during the investigation following the stop, considered as having been taken into custody for purposes of *Miranda* or article 38.22 warnings. *See Berkemer v. McCarty*, 468 U.S. 420, 440, 442 (1984); *State v. Stevenson*, 958 S.W.2d 824, 829 (Tex. Crim. App. 1997); *Rodriguez*, 191 S.W.3d at 440. Subsequent events, however, may cause a traffic stop to escalate to a custodial encounter. *Stevenson*, 958 S.W.2d at 828. The fact that an appellant becomes the focus of a DWI investigation does not automatically convert an investigatory detention into an arrest and custodial interrogation. *Rodriguez*, 191 S.W.3d at 441. An officer's knowledge of probable cause to arrest for a DWI does not automatically establish custody. *Id.*

With these principles in mind, we turn to whether the DVD containing appellant's roadside conversation with Officer Allen was admissible under *Miranda and* article 38.22.

### III. DISCUSSION

Appellant argues that she was in custody when she asked to speak to an attorney and that, therefore, her subsequent videotaped statements should not have

9

been admitted into evidence. In support of her argument, appellant points to Officer Allen's pre-trial testimony that although he did not explicitly tell appellant that she could not leave the accident scene, "it was clear that she wasn't going to be allowed to just walk away." The State argues that: (1) Officer Allen's questioning of appellant was an investigative detention to determine facts regarding the accident; (2) because appellant was not in custody when she requested an attorney, she was not entitled to the protections against custodial interrogation; and (3) even if the trial court erred in admitting State's Exhibit 1 containing appellant's roadside statements, any error was harmless because there was other overwhelming evidence of appellant's guilt.

We agree with the State that appellant was not in custody when she requested an attorney. A defendant's Sixth Amendment right to counsel, which provides a defendant a right to assistance of counsel in a criminal prosecution, is invoked when formal charges have been filed against him. *Griffith v. State*, 55 S.W.3d 598, 603 (Tex. Crim. App. 2001); *see* U.S. CONST. amend. VI. A person does not become an "accused" simply because she has been detained by the government with the intention of filing charges against her. *Griffith*, 55 S.W.3d at 603–04. In this case, formal adversary judicial proceedings had not started because the State had not filed any charges against appellant, and therefore, appellant's Sixth Amendment right to counsel had not yet attached. *See id.* at 604; *see also Duke v. State*, No. 2-02-290-CR, 2003 Tex. App. LEXIS 2651, at *5 (Tex. App.—Fort Worth March 27, 2003, no pet.) (mem. op.) (not designated for publication) (holding that administering blood-alcohol test to appellant after he had requested, but not received, the advice of counsel did not violate his Sixth Amendment right to counsel because State had not yet filed charges against him).

10

A defendant's Fifth Amendment right to counsel, which protects a defendant from governmental compulsion to be a witness against herself, is invoked when she is subjected to custodial interrogation. *Griffith*, 55 S.W.3d at 602. "[P]olice words or actions 'normally attendant to arrest and custody' do not constitute interrogation." *Id.* at 603 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)) (noting that appellant's refusal to submit to breathalyzer test did not result from a custodial interrogation). "Questions normally accompanying the processing of a D.W.I. arrestee do not constitute interrogation." *Id.*

Officer Allen testified that appellant was initially detained to determine her involvement in the accident and that he continued to question her to determine whether she was intoxicated. This case is similar to the circumstances in *Lewis v. State* and other cases holding that the roadside questioning of motorists suspected of DWI did not constitute "custodial interrogation" subject to *Miranda* warnings. 72 S.W.3d 704, 713 (Tex. App.—Fort Worth 2002, pet. ref'd). In *Lewis*, a police officer investigating a vehicular collision questioned the driver of one of the vehicles about the accident, and noticed that he smelled of alcohol and had bloodshot and glassy eyes. *See id.* at 706. In response to the officer's question, the appellant stated that he had consumed about five beers. *See id.* The *Lewis* court held that the trial court did not err in admitting the statement because appellant was not in custody when he made the statement. *See id.* at 713; *see also Stevenson*, 958 S.W.2d at 829 (holding that accident investigation that became DWI investigation, including questioning and field-sobriety tests, did not rise to level of custodial interrogation); *Hutto v. State*, 977 S.W.2d 855, 858 (Tex. App.—Houston [14th Dist. 1998, no pet.) (concluding, in investigation of one-car accident, that

11

the appellant's roadside statements to officer that he was driving truck and had four beers were admissible because appellant was not in custody under *Miranda*); *see also Hines v. State*, No. 04-11-577, 2012 Tex. App. LEXIS 7233, at *13 (Tex. App.—San Antonio August 29, 2012, pet. ref'd) (op.) (designated for publication) (holding that appellant's statements to officer during accident investigation that became a DWI investigation were admissible because appellant was not in custody).

We hold that appellant did not meet her burden to establish that she was in custody. Thus, the trial court did not abuse its discretion in denying appellant's motion to suppress. We overrule appellant's sole issue.

## IV. CORRECTED JUDGMENT

We note that the judgment, signed by the trial court on December 15, 2011, inaccurately states that appellant pleaded guilty and waived a jury trial. On October 15, 2012, this Court received a supplemental clerk's record containing a nunc pro tunc judgment signed by the trial court on October 10, 2012. The nunc pro tunc judgment correctly states that appellant pleaded not guilty and a jury found her guilty of DWI, a class B misdemeanor offense. However, the nunc pro tunc judgment incorrectly states that the jury assessed appellant's punishment at 180 days' confinement in county jail and a $500 fine plus costs.

The reporter's record of the December 15, 2011 sentencing hearing reflects that punishment was assessed by the trial court—not the jury. At the conclusion of the hearing, the trial court: (1) imposed a sentence of 180 days' confinement in county jail, but suspended the sentence and placed appellant on community supervision for two years; (2) assessed a $500 fine plus court costs; (3) ordered one hundred hours of

12

community service as a condition of community supervision, to be completed in ten months; (4) ordered appellant to complete DWI school within 180 days; (5) ordered restitution in the amount of $800 payable to Sheri Patton; and (6) ordered appellant to serve ten days in county jail as a condition of her community supervision.

"A trial court's pronouncement of sentence is oral, while the judgment, including the sentence assessed, is merely the written declaration and embodiment of that oral pronouncement." *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002). "When the oral pronouncement of sentence and the written judgment vary, the oral pronouncement controls." *Id.* Accordingly, we modify the nunc pro tunc judgment to accurately reflect the record. The rules of appellate procedure provide that an appellate court may modify the trial court's judgment and affirm it as modified. TEX. R. APP. P. 43.2(b); *see Banks v. State*, 708 S.W.2d 460, 461 (Tex. Crim. App. 1986) (holding that when an appellate court has the necessary data and evidence before it for modification, the judgment and sentence may be modified on appeal).

## V. CONCLUSION

We affirm, as modified, the trial court's nunc pro tunc judgment.

_____
DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)

Delivered and filed the
29th day of November, 2012.

13